UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

ILYA KLIOT,

                              Plaintiff,                   **DECISION AND ORDER**

              -against-                               22 Civ. 597 (KMK) (AEK)

JOSEPH MARCHIONNO, *et al.*,

                              Defendants.
---------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

      This matter has been referred to the undersigned for general pretrial supervision. ECF No. 23. Currently before the Court is Defendants' motion to disqualify Plaintiff's counsel. ECF No. 32. For the reasons that follow, Defendants' motion is DENIED.

## BACKGROUND[1]

      Plaintiff Ilya Kliot commenced this lawsuit on January 23, 2022, asserting federal claims pursuant to 42 U.S.C. § 1983 for excessive force, unlawful seizure, and malicious prosecution in violation of the Fourth Amendment to the United States Constitution, and a state law claim for negligent infliction of emotional distress. The action stems from an incident that occurred on January 5, 2021, when Defendants Joseph Marchionno, Ernest Small, Christopher Lowing, and Michael Milanes, all of whom are employed as safety officers at the Rockland Psychiatric Center, arrested Plaintiff, who is also employed at the Rockland Psychiatric Center.

      Plaintiff alleges that after parking his vehicle in the parking lot, he was confronted by Marchionno, who demanded that Plaintiff move his vehicle or else it would be towed.

---

[1] The facts set forth in the first two paragraphs of this section are taken from the allegations in the complaint. *See* ECF No. 1.

According to Plaintiff, when he got back into his vehicle, Marchionno positioned himself in front of the vehicle, making it impossible for Plaintiff to comply with Marchionno's instructions to move. Plaintiff alleges that Marchionno then yelled at him to exit the vehicle and radioed for assistance from additional officers. In response, Defendants Small, Lowing, and Milanes arrived on the scene, and Plaintiff alleges that the four officers violently yanked him out of his vehicle, slammed him to the ground, and pinned him down so he could not breathe. Plaintiff alleges that he was subsequently taken to the Safety Department Office, where he was handcuffed to a bench; one hour later, Marchionno handed Plaintiff a citation and told him that he was being ticketed for disorderly conduct and parking. Days after the incident, Plaintiff filed an injury incident report, including a workplace violence complaint, with the Rockland Psychiatric Center. Approximately three or four weeks after he filed the complaint, Plaintiff received a criminal summons in the mail, which included charges of resisting arrest and disorderly conduct. Plaintiff states that all criminal charges against him were dismissed on or about June 3, 2021.

In March 2021, Plaintiff retained Vince F. Sykes, Esq., to represent him for purposes of pursuing civil rights claims arising from the January 5, 2021 incident. ECF No. 35 ("Mem. in Opp'n") at 4. Sykes previously represented Marchionno in connection with uncontested divorce proceedings from June 2019 through August 2020. ECF No. 33 ("Mem. in Supp.") at 1; *see* ECF No. 34 ("Marchionno Decl.") ¶ 2 & Ex. A (docket sheet from matrimonial action); ECF No. 41 ("Sykes Decl."[2]) ¶ 3. According to Marchionno, he met with Sykes four or five times during

---

[2] Plaintiff's counsel originally filed the Sykes Declaration at ECF No. 36 without the attached exhibits—all of which are documents from Marchionno's divorce proceedings, including orders which had been issued in Family Court related to custody and child support. Without making a proper application to the Court, Plaintiff's counsel also filed the Sykes Declaration *with* all of the exhibits under seal at ECF No. 37. Counsel was then directed by the Court to file a motion to have the exhibits to the Sykes Declaration filed under seal, and on December 16, 2022, counsel filed a joint letter motion to seal that did not provide any

the course of the divorce representation. Marchionno Decl. ¶¶ 2, 5. Marchionno states that during his discussions with Sykes, he "provided him extensive financial information because one of the issues that had to be resolved with the divorce was child support." *Id.* ¶ 3. Marchionno also discussed with Sykes "the breakdown of [his] marriage and the reason for the divorce[.]" *Id.* ¶ 4. Sykes did not seek a conflict waiver from Marchionno at any point, and Marchionno asserts that he would have refused to sign such a waiver had he been asked. *Id.* ¶ 6. According to Marchionno, he is "extremely concerned about Mr. Sykes representing someone suing me after he was my attorney." *Id.* ¶ 7.

Sykes's description of his prior representation of Marchionno suggests a more limited engagement. According to Sykes, there were no disputes concerning finances, assets, support, custody, or visitation in the matrimonial matter. Sykes Decl. ¶ 4. Issues of child custody and visitation, as well as child support, had already been decided in a separate Family Court case prior to Sykes's representation of Marchionno. *Id.* ¶ 6. Marchionno provided the custody/visitation and child support orders from the Family Court case to Sykes, and these orders were incorporated into the judgment of divorce. *Id.* ¶ 7. Sykes asserts that there was no need for him to speak with Marchionno about his finances because the issue of child support had already been decided; moreover, because Marchionno's ex-wife never appeared in the divorce proceeding, Sykes explains that he did not draft a settlement agreement or net worth statement

---

explanation of the basis for sealing the exhibits. *See* ECF No. 39. In conjunction with the December 16, 2022 filing, Plaintiff's counsel filed both a sealed version of the Sykes Declaration (with all exhibits), ECF No. 40, and a public version of the Sykes Declaration (with placeholder pages indicating that the exhibits had been filed under seal), ECF No. 41. The December 16, 2022 motion to seal was denied without prejudice "to allow counsel an opportunity to explain why these documents need to be filed under seal, let alone under seal in their entirety." ECF No. 42. Plaintiff's counsel thereafter filed a second motion to seal, ECF No. 43, which the Court has addressed in a separate order that is being issued concurrently herewith.

for Marchionno, and they never discussed spousal support. *Id.* ¶¶ 8-9. Under the circumstances, Sykes maintains that "any discussion about Mr. Marchionno's finances, character, behavior, lifestyle and any other personal or confidential information [would have been] irrelevant and frankly inappropriate." *Id.* ¶ 10.

## DISCUSSION

### I.     Legal Standard

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quotation marks omitted). "In exercising this power, [courts attempt] to balance a client's right freely to choose his [or her] counsel against the need to maintain the highest standards of the profession." *Id.* (quotation marks omitted). "When presented with a disqualification motion, courts in the Second Circuit have been instructed to take a restrained approach that focuses primarily on preserving the integrity of the trial process." *Streichert v. Town of Chester, New York*, No. 19-cv-7133 (KMK), 2021 WL 735475, at *4 (S.D.N.Y. Feb. 25, 2021) (quotation marks omitted). "The Court's role, therefore, is not to police each and every violation of professional rules, but rather to ensure that the proceeding before it is free from taint." *Id.*

"Because disqualification motions can often be strategically motivated, create delay and additional expense, and interrupt attorney-client relationships, the movant must satisfy a high standard of proof to disqualify the non-movant's counsel." *Id.* at *5 (citing cases). "Mere speculation will not suffice to meet this high standard, just as the mere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion." *Id.* (cleaned up).

4

"Resolving a disqualification motion is a fact-intensive endeavor that requires painstaking analysis of the facts and precise application of precedent." *Id.* (cleaned up).

In cases involving successive representation, the court may disqualify an attorney if

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his [or her] prior representation of the client.

*Hempstead Video*, 409 F.3d at 133 (quoting *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791 (2d Cir. 1983)).

"A pending matter is substantially related to the subject matter of an attorney's prior representation when the relationship between issues in the prior and present cases is patently clear and when the issues involved have been identical or essentially the same." *Gurniak v. Emilsen*, 995 F. Supp. 2d 262, 272 (S.D.N.Y. 2014) (cleaned up). "It is the congruence of *factual* matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes." *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 392 (S.D.N.Y. 2010) (quotation marks omitted) (emphasis in original). "This standard is easily applied to cases where both the prior and present representation involve litigation: if the facts giving rise to an issue which is material in both the former and the present litigations are as a practical matter the same, then there is a substantial relationship between the representations for purposes of a disqualification motion." *Id.* (cleaned up). If it can be "established that a substantial relationship exists between the prior and current matters, it is presumed that counsel who participated in both had access during the first litigation to

5

confidential information that would be relevant in the second." *Id.* at 392-93. But this presumption is rebuttable. *Id.* at 393.

Both parties also address relevant rules of professional conduct, which can "provide general guidance" to courts in resolving motions for disqualification. *Hempstead Video*, 409 F.3d at 132. Specifically, Rule 1.9 of New York Rules of Professional Conduct states that

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

N.Y. R. Prof'l Conduct 1.9(a). The Commentary to Rule 1.9 adds that

> Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if, under the circumstances, a reasonable lawyer would conclude that there is otherwise a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce.

N.Y. R. Prof'l Conduct 1.9, cmt. 3. While these provisions are instructive, the Second Circuit has made clear that even if attorney conduct might run afoul of a particular rule of professional conduct, "not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video*, 409 F.3d at 132.

## II.     Application of Legal Standard

Because Sykes previously represented Marchionno in his divorce proceedings, the three-part test governing disqualification in cases of successive representation applies. There is no dispute that the first requirement of the test has been met—the moving party (Marchionno) is a former client of the adverse party's counsel (Sykes). The parties' dispute is focused on the

second and third elements of the standard—*i.e.*, whether there is a "substantial relationship" between the subject matter of the divorce proceedings and the issues to be litigated in the present lawsuit, and whether Sykes had access to relevant privileged information in the course of his prior representation of Marchionno.

      Here, there is no substantial relationship between Sykes's prior representation of Marchionno and his current representation of Plaintiff.  The earlier matter involved an uncontested divorce, a representation which, according to Sykes, was made more straightforward because the potentially complex and nuanced issues of child custody and child support had been resolved in Family Court prior to Sykes's work with Marchionno.  Sykes Decl. ¶¶ 4-6.  There is no legal or factual overlap between the issues that arose in the prior representation and Plaintiff's § 1983 claims of excessive force, unlawful seizure, and malicious prosecution, and his state law claim for negligent infliction of emotional distress.  Defendants recognize the facial difficulty of their position, going as far as to acknowledge that the divorce proceedings and Plaintiff's § 1983 claims "may appear unrelated on the surface."  Mem. in Supp. at 5.  Yet they maintain that the Court can find the requisite "substantial overlap" because Marchionno shared with Sykes "deeply personal information about the breakdown of his marriage and the details of his finances."  *Id.*  This is not sufficient for Sykes to be disqualified in this matter.  All of Plaintiff's causes of action stem from an incident that occurred on January 5, 2021—months after Marchionno's divorce was finalized—and concern the workplace conduct of Marchionno and his fellow safety officers, not anything having to do with Marchionno's personal life, financial circumstances, or even his state of mind during the course of his divorce proceedings.  There is simply no basis to conclude that any issues related to Marchionno's marriage, family, or finances have a substantial relationship to any of the issues in this case, *i.e.*, whether Marchionno used

excessive force against, falsely arrested, maliciously prosecuted, or negligently inflicted emotional distress upon, Plaintiff.  Nor is this a situation in which "the facts giving rise to an issue which is material in both the former and the present litigations are as a practical matter the same," *Revise Clothing, Inc.*, 687 F. Supp. 2d at 392—indeed, the facts of the two matters do not appear to be connected in any way whatsoever.  The relationship between the issues in Marchionno's divorce proceedings and those in Plaintiff's § 1983 case certainly is *not* "patently clear," and the issues involved are not at all "identical or essentially the same."  *Gurniak*, 995 F. Supp. 2d at 272.  Defendants thus cannot satisfy the second part of the three-part test for disqualification articulated in *Hempstead Video* and elsewhere.

   Defendants' contend that the Commentary to Rule 1.9 of the New York Rules of Professional Conduct suggests that divorce representations deserve heightened consideration in a disqualification analysis, "[l]ikely because of the deeply personal nature of a divorce . . . ."  Mem. in Supp. at 5.  But the factual scenario posited in the Commentary is completely inapposite—there, the prior representation required the lawyer to learn "extensive private financial information" about the businessperson client, which would be directly relevant to substantive factual and legal issues that would be expected to be raised in a subsequent divorce proceeding, such as financial support payments and the distribution of assets.  The example provided in the Commentary is nothing more than a straightforward application of the "substantial relationship" standard—contrary to Defendants' argument, there is no greater or lesser likelihood of a substantial relationship between two representations just because one of them was a matrimonial action.  Unlike the example offered in the Commentary, Marchionno fails to demonstrate any "congruence of factual matters" between his earlier divorce proceedings and Plaintiff's allegations against him in this lawsuit.

Even if Marchionno could establish that there is a substantial relationship between Sykes's prior representation of him during his divorce proceedings and Sykes's current representation of Plaintiff here—which he cannot—the motion for disqualification would still fail because Marchionno has not demonstrated that Sykes had access to "relevant privileged information" in the course of the prior representation.[3] The parties dispute the extent to which Sykes had access to *any* meaningful privileged and confidential information as a result of his representation of Marchionno during the divorce proceeding. *Compare* Marchionno Decl. ¶¶ 3-4 (Marchionno asserts that he provided Sykes "extensive financial information" and discussed with him "the breakdown of my marriage" and "reason for the divorce") *with* Sykes Decl. ¶¶ 8-9. But even assuming Marchionno's recollections are accurate, it remains unclear how his financial information and his thoughts and mental impressions regarding the dissolution of his marriage are in any way "*relevant* privileged information," *see Hempstead Video*, 409 F.3d at 133 (emphasis added), in the context of the present lawsuit. *See L.D. v. Seymour*, 577 F. Supp. 3d

---

[3] Defendants appear to argue that disqualification would be appropriate if Marchionno could satisfy the third element of the successive representation standard—regarding access to privileged information—even if they failed to show a substantial relationship between the prior and current representations. *See* Mem. in Supp. at 5-6 ("Even when there is not congruence in facts, courts have found that 'disqualification is warranted where an attorney is potentially in a position to unfairly advantage his current client through the use of privileged information.'") (quoting *Zalewski v. Shelroc Homes LLC*, 856 F. Supp. 2d 426, 436 (N.D.N.Y. 2012)); ECF No. 38 at 3 (same). But in *Zalewski*, the two actions in question involved the same facts, and the court's decision there left little doubt that there had been a substantial relationship between the prior and current representations at issue. *See* 856 F. Supp. 2d at 430 ("The allegations rendered against the Defendants in the prior case's third amended complaint are repeated nearly verbatim in our Complaint."); *see also id.* at 433-34 ("It was much to [the Defendants'] surprise when Palmateer filed a notice of appearance on behalf of the Plaintiffs in the previous case and much to their chagrin when the third amended complaint and the Complaint in this matter recited details that they thought were shared in confidence during the February 16, 2011 meeting, which had not been pled in the original complaint."). In short, a party seeking disqualification must satisfy both the second and third elements of the test—that is, a substantial relationship between the matters and access to relevant privileged information. Here, Marchionno cannot meet his burden as to either one.

85, 92 (N.D.N.Y. 2022) ("[A]lthough attorney Meagher likely obtained privilege information during his representation of plaintiff during the [prior] matrimonial litigation, there has been no demonstration that he had access to *relevant* privileged information.") (emphasis in original). Some access to privileged information from a prior representation is not sufficient for disqualification—the privileged information in question must be relevant, because only access to relevant privileged information raises the specter of interfering with the integrity of the adversary process. *See United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) ("disqualification is called for only where an attorney's conduct tends to taint the underlying trial, because federal and state disciplinary mechanisms suffice for other ethical violations" (cleaned up)). At bottom, Marchionno does not articulate how information regarding the "highly personal matters" discussed with Sykes during the divorce representation is actually relevant here. Instead, Defendants vaguely suggest only that such information "could become relevant and could be used by the Plaintiff in this action against Mr. Marchionno." Mem. in Supp. at 6. Such speculation is not sufficient for Marchionno to show that Sykes had access to any relevant privileged information. *See Hickman v. Burlington Bio-Medical Corp.*, 371 F. Supp. 2d 225, 229 (E.D.N.Y. 2005) ("Speculation regarding the divulging of client confidences will not suffice to grant a motion to disqualify."); *id.* at 231 ("The failure to prove a substantial relationship between the earlier and present litigation destroys any presumption of relevant shared confidences and Defendants' papers point to no particular instance of any such confidence."). Because Defendants have failed to demonstrate that Sykes had access to privileged and confidential information that is relevant to any of the issues in this case, they cannot satisfy the third part of the three-part test for disqualification.

* * * * * * * * * *

In sum, Defendants have failed to meet the "high standard of proof" required to disqualify Sykes from serving as Plaintiff's attorney in this litigation. *See Streichert*, 2021 WL 735475, at *5. Accordingly, the motion to disqualify Sykes from representing Plaintiff in this matter must be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to disqualify Plaintiff's counsel, ECF No. 32, is DENIED.

Discovery in this matter has been stayed pending the resolution of this motion. *See* ECF No. 31. By January 31, 2023, the parties must write to Judge Karas to notify him that the motion has been decided; that correspondence must include a joint proposed revised case management and scheduling order which tracks the language and structure of Judge Karas's standard case management and scheduling order template. *See* ECF No. 22.

Once a revised schedule has been entered, the undersigned will issue a scheduling order setting the date for the next case management conference.

Dated: January 25, 2023
       White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge